IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TOMMY DEAN PROFFITT, JR., | § | |
|     Petitioner | § | |
| | § | |
| VS. | § | C.A. NO. C-05-186 |
| | § | |
| DOUG DRETKE, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE–INSTITUTIONAL DIVISION, | § | |
|     Respondent | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the Telford Unit in New Boston, Texas. The actions about which he complains took place in Bee County, Texas. Proceeding *pro se,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 31, 2003 (D.E. 1). Petitioner claims his constitutional rights were violated when the state trial court engaged in judicial misconduct and also that he was denied effective assistance of counsel at both the trial and appellate levels. Respondent filed an answer and motion for summary judgment on June 6, 2003 (D.E. 10) to which petitioner responded on June 12, 2003 (D.E. 11). This case was transferred from the Eastern District of Texas to the Southern District, Corpus Christi division, on April 18, 2005.

## BACKGROUND

**A. Procedural History**

Following a plea of not guilty, petitioner was tried in front of the court in the 156th Judicial District Court of Bee County, Texas, and was found guilty of "Indecency With a Child–Contact" for an offense which occurred on September 26, 1999. On April 6, 2000, petitioner was sentenced

to 12 years incarceration in TDCJ-ID (Ex Parte Proffitt, App. No. 54,725-01 at 234)[1]. Petitioner appealed and the 13th Court of Appeals affirmed the trial court in an unpublished opinion on June 14, 2001 (Proffitt v. State, No. 13-00-297-CR (Tex. App.– Corpus Christi, 2001)). Petitioner filed a petition for discretionary review which was refused by the Texas Court of Criminal Appeals on October 31, 2001 (Proffit v. State, No. 01-1318).

Petitioner filed an application for habeas corpus relief in state court on August 2, 2001 (Ex Parte Proffitt, App. No. 54,725-01 at 15). The trial court ordered that affidavits be filed and on December 23, 2002 entered findings of fact and conclusions of law, recommending that petitioner's application be denied (Id. at 18-19; 260-261). The Texas Court of Criminal Appeals denied petitioner's application without written order on the findings of the trial court on February 19, 2003 (Id. at cover). Respondent concedes that petitioner exhausted his state court remedies and filed his federal application in a timely manner.

**B. Statement of Facts**

At trial the victim, an eleven year old boy, testified that during the late evening of September 25, 1999, he was sitting in petitioner's living room watching a movie. Petitioner and his sister Norma Proffitt, who was also a friend of the victim's mother, lived at the apartment. Present in the living room watching the movie were the petitioner, the victim, the victim's nine year old sister, his ten year old brother, an adult friend of petitioner, and two other children. The victim testified that petitioner, who was sitting on the floor with his back against the couch, pulled him up between his legs and started feeling his abdomen and chest (3 SF 124). The victim's sister turned around and looked at them and petitioner told her to turn around and watch the movie or he

---

[1]The state court records are located at D.E. 29. "SF" refers to the statement of facts.

would hit her with a cane. Petitioner put his hand inside the victim's pants and touched his penis (3 SF 125) and rubbed the outside of his pants (3 SF 126). The victim's mom entered the apartment and petitioner jerked his hands up and away from the victim's abdominal area.

The victim's nine year old sister sister testified that she saw petitioner rub the victim's chest and his private parts both on the inside and outside of his clothes (3 SF 97-98). She also said that petitioner told her to turn around and watch television or he would hit her with a cane (3 SF 98).

Rita Reyna, a friend of the victim's mother, testified that she entered the apartment that evening and saw petitioner sitting on the floor with the victim in front of him. Petitioner's hands were resting on the victim's crotch. The victim was trying to sit up and when Reyna stuck her head inside, she saw petitioner's eyes widen in what she interpreted as shock and he released his grip, allowing the victim to stand up (3 SF 58-60). Early the next morning, when the victim was back at his mom's apartment, he woke up his mom and Reyna, and began crying as he told them that petitioner had touched him and that he wanted to report it to the police. (3 SF 73).

Petitioner testified that while watching the movie, the victim was moving around in front of petitioner so he tapped him on the shoulder and asked him to please move. The victim then moved back into petitioner's lap of his own accord. Petitioner has nieces and nephews and is used to children feeling comfortable around him (3 SF 155). The victim's back was on petitioner's crossed legs and his head was resting on petitioner's abdomen (3 SF 156). At one point petitioner stretched out his legs and the victim leaned back onto him with his head below petitioner's abdomen. Petitioner did not want him to lie there, so he picked him up and put one arm around the victim's abdomen so that he would not slip down any more (3 SF 160-161). Petitioner admitted he may have rubbed the victim's shoulders during a sad moment in the show because he had been

drinking and felt emotional (3 SF 160). He did not touch him for sexual gratification (3 SF 161-162).

### C. Petitioner's Claims

Petitioner claims that the trial court engaged in judicial misconduct when it failed to appoint counsel for petitioner during arraignment, reading of the formal charge, preliminary hearing, indictment and information. Petitioner also claims he received ineffective assistance of counsel in the following manner (1) Counsel failed to subpoena any defense witnesses for the guilt/innocence phase of the trial; (2) Counsel failed to file any pretrial motions; (3) Counsel failed to make a reasonable investigation; (4) Counsel failed to make an opening statement; (5) Counsel failed to object to prosecutorial misconduct; (6) Counsel failed to petition the court for a psychological expert; (7) Counsel failed to confer with defendant; (8) Counsel failed to object to lack of notice regarding outcry testimony and failed to object to the resultant hearsay; (9) Counsel failed to object to the prosecutor's bolstering of witness testimony. Petitioner further argues that the cumulative effect of these errors resulted in ineffective assistance of counsel. Finally, petitioner argues that his appellate counsel failed to file a motion for new trial and failed to raise all of trial counsel's errors on appeal.

Respondent counters that petitioner had counsel throughout all critical stages of his trial and that he received effective assistance of counsel at the trial and on appeal.

# APPLICABLE LAW

## A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from the Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).

Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective standard, and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523). A federal court has no authority to grant habeas corpus relief simply because it concludes in its independent judgment that a state court's judgment is erroneous or

5

incorrect. Neal, 239 F.3d at 687. In determining whether a state court decision in a habeas case is reasonable, the focus is on the ultimate legal conclusion reached by the state court and not on whether the state court considered and discussed every angle of the evidence. "[T]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" Neal, 239 F.2d at 696 (citing Hennon v. Cooper, 109 F.3d 330, 334-335 (7th Cir. 1997)).

In petitioner's case, the Texas Court of Criminal Appeals denied his application for habeas corpus relief without written order on the findings of the trial court (Ex Parte Proffitt, App. No. 54,725-01, at cover). In Texas writ jurisprudence, a denial of relief rather than "dismissal" of a claim by the Court of Criminal Appeals generally disposes of the merits of a claim. Singleton v. Johnson, 178 F.3d 381, 384 (5th Cir. 1999). Accordingly, petitioner must show that the denial of habeas relief in state court was contrary to, or involved an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

## A. Judicial Misconduct

Petitioner argues that the trial court engaged in judicial misconduct by failing to appoint counsel for petitioner at the arraignment or preliminary hearing or at the indictment, information or reading of the formal charges against him. A defendant has the right to the presence of an attorney during any interrogation occurring after the first formal charging proceeding, the point at which the Sixth Amendment right to counsel initially attaches. Moran v. Burbine, 475 US. 412, 428, 106 S.Ct. 1135, 1144, 89 L.Ed.2d 410(citing United States v. Gouveia, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) and Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). The initiation of adversary judicial proceedings includes a formal

charge, preliminary hearing, indictment, information or arraignment. Gouveia, 467 U.S. at 188, 104 S.Ct. at 2297.

The record shows that petitioner was arrested for indecency with a child on October 12, 1999 and released on a $5,000 surety bond (Ex Parte Proffitt, App. No. 54,725-01 at 236). He was indicted by the grand jury on December 21, 1999 and was arrested on the indictment on December 29, 1999. He was released on a $10,000 surety bond that same day (Id. at 16-17, 236). Jesus Santos was appointed to represent petitioner on January 6, 2000 (Id. at 111). Petitioner does not assert that he was subject to any interrogation after his arrest in October 1999 and before he was appointed counsel on January 6, 2000. Petitioner was formally arraigned on the charge in open court on February 8, 2000 and his attorney was present at that time (3 SF 8-9). Petitioner has failed to show that he was not appointed counsel in a timely manner, and failed to show he was prejudiced by the absence of appointed counsel at any point in the proceedings.

**B. Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. Id., 466 U.S. at 687-688, 104 S.Ct.at 2064. Petitioner must show "significant prejudice" in a noncapital context. Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994)(citing Spriggs v. Collins, 99 F.2d 85, 88, n. 4 (5th Cir. 1993)). Prejudice in this context means that the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

In Strickland, the Supreme Court made clear that judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omission were outside the wide range of professionally competent assistance. Id., 466 U.S. at 690, 104 S.Ct. at 2066.

**(1) Failure to Subpoena Witnesses**

Petitioner argues that his counsel failed to subpoena witnesses although he gave his counsel the names of witnesses whom he wanted to testify. Petitioner's attorney stated in an affidavit that he and petitioner discussed obtaining a subpoena for petitioner's sister, Norma Proffitt, but petitioner asked him not to because they were not on good terms. They also discussed obtaining a subpoena for Ysaias Guerrero, Jr., petitioner's friend who was present at the scene, but petitioner did not want to because he was afraid it would create a conflict between petitioner and petitioner's current lover Patrick Hernandez. Trial counsel also spoke to Hernandez about testifying during the punishment phase, but Hernandez did not want to do so (Ex Parte Proffitt, App. No. 54,725-10 at 24).

In his response to the motion for summary judgment, petitioner argues that although he initially told his counsel not to call the witnesses, he later changed his mind and asked that they be called. He claims that counsel told him to call the witnesses he wished to have testify and also to

8

give him the names of any other witnesses he wished to subpoena but petitioner did not think it was his job to find the names of potential witnesses (Resp. to Mo. Sum. Jmt., D.E. 11, p. 4).

Regardless of whose responsibility it was to contact potential witnesses, petitioner does not identify the people he wanted to have testify at his trial, does not provide any affidavits from any of the witnesses regarding their testimony and does not describe what their testimony would have been. Petitioner's conclusory speculation about the effect of the unidentified favorable witness' testimony falls far short of the prima facie showing of prejudice necessary to show ineffective assistance of counsel. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001)(citing United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983)). Accordingly, his argument regarding counsel's failure to subpoena favorable witnesses is without merit.

**(2) Failure to File Pretrial Motions**

Petitioner claims that his attorney should have filed a motion to suppress the statement he gave to police, but he does not identify any grounds on which his attorney could have relied to suppress his statement. At the trial, petitioner testified that he voluntarily went to the police station to give a statement about the incident and volunteered the information that he was gay and a practitioner of WICCA (3 SF 143-146). Accordingly, his statements would not be subject to suppression. See Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966)("Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence.") Failure to assert a meritless objection cannot be grounds for a finding of deficient performance. Emery v. Johnson, 139 F.3d 191 (5th Cir. 1997).

Petitioner also argues that his attorney should have filed a motion for discovery to investigate the fact that state authorities previously had removed a child from the victim's mother's custody. He claims that her fear of having her other children removed from her care prompted her

9

to falsely accuse petitioner of child abuse because she feared petitioner was going to report her to Child Protective Services for leaving her children unsupervised while she went out drinking. At the trial, petitioner testified that he told her children that had he been any other person, he would have reported her to Child Protective Services (3 SF 153). However, the victim testified that he did not hear petitioner make the comment (3 SF 137). Under these facts petitioner cannot show that the victim's mother even knew that he threatened to report that she was neglecting her children and any investigation into prior removals would have been pointless. Petitioner has not shown what would have been learned from such an investigation and how it would have affected the outcome of his case.

### (3) Failure to Make a Reasonable Investigation

Petitioner argues that his counsel failed to seek pre-trial discovery, failed to interview defense witnesses, failed to seek and interview other potential witnesses, failed to investigate the validity of petitioner's statement and failed to visit the scene of the alleged crime. Petitioner's counsel stated in an affidavit that he did not interview the two other adults at the scene because petitioner asked him not to do so (Ex Parte Proffitt, App. No. 54,725-01 at 24-25). The other children at the scene were asleep at the time the incident occurred (3 SF 18, 66). Petitioner does not describe what his counsel could have done to investigate the validity of petitioner's statement or how it would have benefitted his case if his attorney had visited the scene of the alleged crime. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." U.S. v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). Petitioner has failed to meet his burden on this issue.

10

**(4) Opening Statement**

Petitioner complains that his attorney failed to make an opening statement and deprived the trier of fact an explanation of what the defense would be. The record is clear that the court, the trier of fact in this case, heard a complete explanation of the defense. Petitioner failed to demonstrate that the outcome of the proceeding would have been different. Petitioner's claim is without merit.

**(5) Failure to Object to Prosecutorial Misconduct**

Petitioner claims that his attorney should have objected when the prosecutor referred to his homosexuality and practice of WICCA because he asserts that the evidence was irrelevant and prejudicial. Arguments relating to the admissibility of evidence cannot form the basis of an ineffective assistance of counsel claim in a bench trial because "a judge, sitting as trier of fact, is presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible." U.S. v. Cardenas, 9 F.3d 1139, 1156 (5th Cir. 1993)(citing Government of the Canal Zone v. Jimenez G., 580 F.2d 897, 898 (5th Cir. 1978)). Even if petitioner's counsel were ineffective for not objecting to the evidence, he cannot show prejudice under Cardenas.

Moreover, his attorney explained in his affidavit that he did not object to the admission of petitioner's statement, which contained the information about homosexuality and WICCA, because the statement also contained an explanation of petitioner's defense–that he had touched the boy, but not in a sexual manner and only by accident (Ex Parte Proffitt, App. No. 54,725-01 at 25). "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the

entire trial with obvious unfairness.'" Lave v. Dretke, 416 F.3d 373, 380 (5th Cir. 2005)(citing United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)). Counsel's decision to admit the statement was a strategic decision based on a desire to show that petitioner's explanation of events had been consistent since the police first began investigating the incident. Petitioner's claim that it constituted ineffective assistance of counsel is without merit.

### (6) Failure to Petition Court for Psychological Expert

Petitioner points out that as part of the pre-sentencing investigation ("PSI") prepared in his case, he underwent a psychological examination, one of the conclusions of which was that he did not meet the criteria for pedophilia (5 SF 11, and report of Sharon L. Rogers, Ph.D). He asserts that had his attorney petitioned the court for a psychological expert during the guilt/innocence phase of the trial, the expert would have reached the same conclusion and this information would have led to a finding that he was not guilty of the crime.

Petitioner's argument is based on speculation. Even if a psychological expert called by the defense had reached the same conclusions as Dr. Rogers, it would not necessarily have led to a finding of not guilty. Dr. Rogers did not conclude that petitioner did not engage in sexual contact with a minor. One of Dr. Rogers's findings was that the Multiphasic Sex Inventory was of questionable validity due to denial of the instant offense. "Responses suggest an exaggerated attempt to appear favorable and dishonesty regarding deviant sexual interests." Also, Dr. Rogers noted that petitioner declined to complete the Abel and Becker Cognitions Scale which measures current and past beliefs regarding responsibility for sexual behavior, claiming he was offended by the content and the implication that he was guilty. The responses he did give indicated that he believed an adult can predict if sexual activity will harm a child later in life and also that he endorsed the belief that an adult feeling a child's body all over without touching the genitals is not

being sexual (Rogers report, attached to Vol. 5 of the Statement of Facts). These findings and comments would not have weighed in petitioner's favor when the court was deciding guilt or innocence and they undermine petitioner's argument that a psychological examination conducted prior to trial would have resulted in a different outcome at trial.

Also, petitioner's attorney pointed out Dr. Rogers's conclusion to the court during the punishment phase (5 SF 11). It is presumed that the court considered the information when it sentenced petitioner to 12 years when he could have been sentenced to 20 years. TEX. PEN. CODE ANN. § 12.33. Petitioner's argument that his counsel was ineffective for not calling a psychological expert during the guilt/innocence phase of the trial is without merit.

### (7) Failure to Consult with Petitioner

Petitioner argues that if his attorney had consulted with him, he would have known that petitioner wanted to base his defense on the idea that the victim's mother called the police and reported the incident because she feared petitioner was going to call Child Protective Services and report that she was negligent. It is clear from the record that counsel understood petitioner's position and presented it to the court (3 SF 153-155). His argument to the contrary is without merit.

### (8) Failure to Object to Outcry Testimony

Petitioner argues that his counsel was ineffective because he failed to object to the introduction of the victim's mother's outcry testimony. Under TEX. CODE CRIM. PROC. Art. 38.072, in a prosecution for prohibited sexual contact, a statement made by a child to an adult regarding the alleged offense is not inadmissible hearsay if, 14 days before the trial, the party intending to offer the statement notifies the adverse party of its intention to do so; provides the

13

name of the witness through whom it intends to offer the statement and provides the adverse party with a summary of the statement. In addition, the trial court must find, in a hearing conducted outside the presence of the jury, that the statement is reliable, based on the time, content and circumstances of the statement and the child must testify or be available to testify.

In petitioner's case, the prosecution notified petitioner that it intended to call the victim's mother as an outcry witness (Ex Parte Proffitt, App. No. 54,725-01 at 103). Instead, the prosecution called Reyna, who was with the victim's mother at the time the victim described the incident to his mother. Also, no hearing was held regarding the outcry statement. Assuming that petitioner's counsel should have objected to the outcry testimony or should have asked for a hearing on the testimony and failed to do so, petitioner still must show prejudice in order to make out a claim of ineffective assistance of counsel.

Admission of inadmissible hearsay resulting from the incorrect designation of an outcry witness is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial. Elder v. State. 132 S.W.3d 20, 27 (Tex.App.–Fort Worth 2004, pet. ref'd); Poole v. State, 974 S.W.2d 892, 899 (Tex.App.–Austin 1998, pet. ref'd). In this case, both the victim and the victim's sister testified that petitioner touched the victim in the crotch area both on top of and underneath his clothes. Because evidence regarding the details of the incident were admitted into evidence apart from the outcry testimony, petitioner cannot show that the admission of the outcry evidence was prejudicial.

**(9) Failure to Object to Bolstering of Witness Testimony**

Petitioner argues that his counsel should have objected to the prosecutor bolstering the witnesses' credibility during her closing argument. As discussed above, in a bench trial it is presumed that the trier of fact rested his verdict only on the admissible evidence before him and

disregarded the inadmissible evidence. Cardenas, 9 F.3d at 1156. Even assuming trial counsel should have objected to the prosecutor's closing argument, petitioner cannot show that he was prejudiced by the failure.

**(10) Cumulative Error**

Petitioner claims that his counsel's errors and omissions, when taken as a whole, amount to ineffective assistance of counsel. In the Fifth Circuit, federal habeas relief can only be granted for cumulative errors in state trial court when (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992). Meritless claims, or claims that are not prejudicial, cannot be cumulated, regardless of the total number raised. Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996). Because petitioner cannot show that any of the individual errors he claims his attorney made resulted in prejudice under Strickland, he cannot show that they did so cumulatively, either.

**(11) Appellate Counsel**

Petitioner argues that his appellate counsel should have filed a motion for new trial citing ineffective assistance of counsel and discovery of new evidence. Petitioner failed to articulate any new evidence which would have justified the granting of a new trial, and he failed to articulate any other issues which would have warranted the granting of a new trial. Petitioner further argues that his appellate counsel failed to raise all significant and obvious issues of arguable merit. Again petitioner failed to articulate the issues his counsel should have raised, and failed to demonstrate that the outcome would have changed had appellate counsel raised these issues.

## C. Certificate of Appealability

The Supreme Court has stated that the showing necessary for a Certificate of Appealability ("COA") is a substantial showing of the denial of a constitutional right. Hernandez v. Johnson, 231 F.3d 243, 248 (5th Cir. 2000)(citing Slack v. McDaniel, 529 U.S. 473, 483-484 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. See Clark v. Johnson, 202 F.3d 760, 763 (5th Cir. 2000). Specifically, where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack, 529 U.S. at 484. A determination of the merits of a claim should not be part of the decision to issue a COA. Rather, it is the debatability of the underlying constitutional claim, rather than its resolution, that controls whether a COA should issue. Miller-El v. Cockrell, 537 U.S. 332, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

## RECOMMENDATION

Petitioner has failed to meet his burden to show that the state court proceedings (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). It is

respectfully recommended that respondent's motion for summary judgment (D.E. 10) be granted, and petitioner's cause of action for habeas corpus relief be denied. It is further recommended that should petitioner file a motion for a Certificate of Appealability that it be denied.

Respectfully submitted this 28th day of September, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).